UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


CHARLES STEWART (#111347)

VERSUS                                      CIVIL ACTION

BURL CAIN, ET AL                            NUMBER 11-403-JJB-SCR


### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, January 25, 2013.


STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


CHARLES STEWART (#111347)

VERSUS                                        CIVIL ACTION

BURL CAIN, ET AL                              NUMBER 11-403-JJB-SCR


**<u>MAGISTRATE JUDGE'S REPORT</u>**

Before the court is the defendants' Motion for Summary Judgment.   Record document number 33.   The motion is opposed.[1]

Pro se plaintiff, an inmate currently confined in Rayburn Correctional Center, Angie, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Louisiana State Penitentiary ("LSP") Warden N. Burl Cain, Lt. Col. Warren Foster, Capt. Juan Conrad, Capt. Joseph Barr, Capt. Darren Cashio, Lt. Kevin Griffin[2], Sgt. Raymond Laurent[3] and Sgt. Eby.[4]   Plaintiff alleged that the

---

[1] Record document number 44.

[2] Plaintiff identified him as EMT Msgt. Griffin in the complaint. Hereinafter, he will be referred to as Lt. Griffin.

[3] This defendant was identified as Sgt. Larent in complaint.

[4] Plaintiff's claims that (1) Capt. Barr and Capt. Conrad denied him medical treatment, (2) Lt. Col. Foster verbally abused him, (3) and Warden Cain failed to properly supervise, train and discipline his employees and denied the plaintiff's Administrative Remedy Procedure were previously dismissed. Record document number 30.   In addition, the court declined to exercise supplemental jurisdiction over any state law claim, and the claims against Sgt. Eby were dismissed pursuant to Rule 4(m).   *Id.*

defendants were deliberately indifferent to his health and safety in violation of his constitutional rights.   Plaintiff sought compensatory and punitive damages and unspecified injunctive relief.

Defendants moved for summary judgment relying on a statement of undisputed facts, the affidavits of Msgt. Raymond Laurent, Maj. Antonio Whitaker, Capt. Joseph Barr, Capt. Darren Cashio, Lt. Kevin Griffin, Dr. Jason Collins and Capt. Juan Conrad.

Plaintiff opposed the defendants' motion relying on a copy of page 10 of the Employee Policy Memorandum #02-01-005 on the use of force, a copy of the Camp J Unit Shower Roster dated June 12, 2010, a copy of the plaintiff's Elaine Hunt Correctional Center - HSU Treatment Plan dated May 4, 2008, copies of the defendants' affidavits in support of their motion for summary judgment, copies of statements related to the plaintiff's administrative grievance ARP LSP-10-2128, and copies of excerpts from the plaintiff's medical records.

## I. Factual Allegations

Plaintiff alleged that on June 12, 2010, he told Sgt. Eby that he was suicidal and declared himself a mental health emergency. Plaintiff alleged that he was placed in restraints by Sgt. Eby and then placed in a shower cell.. Plaintiff alleged that after the shift changed he was removed from the shower cell by Sgt. Laurent, placed back in his cell and the restraints were removed. Plaintiff

2

alleged that he told Sgt. Laurent that he was having suicidal thoughts and asked why he was not placed in an appropriate cell. Plaintiff alleged that Sgt. Laurent told him there was no other place to put him.  Plaintiff alleged that he tried to hang himself and that Sgt. Laurent "cut me down."

Plaintiff alleged that following his suicide attempt Capt. Cashio and Emergency Medical Technician ("EMT") Lt. Griffin splashed water in his face, twisted his ear, pulled on his head and tried to choke him.  Plaintiff alleged that when he began choking, Capt. Cashio pushed him down on his back and then Capt. Cashio screwed his fist into the plaintiff's chest so hard his skin came off.  Plaintiff alleged that Capt. Cashio gripped the leg restraints and pulled him out of the cell.  Plaintiff alleged that Lt. Griffin grabbed him by the head and he and Capt. Cashio placed him on a stretcher and transported him to the prison hospital. Plaintiff alleged that while in the ambulance, Capt. Cashio punched him in the ear and struck his testicles with a slipper in an effort to make him speak.  Plaintiff alleged that when they arrived at the prison hospital Capt. Cashio acted as though the plaintiff was not responsive and hit him under the nose.

Plaintiff alleged that he was examined by a doctor who ordered that he be placed on suicide watch.  Plaintiff alleged that Capt. Barr escorted him to Camp J.  Plaintiff alleged that while he was being placed in a cell, Lt. Col. Foster commented that there was

nothing wrong with him and told the officers to remove him from that cell.  Plaintiff alleged that Capt. Barr and Capt. Conrad dragged him to Gator 3-Right cell 2 where he was placed in the cell, all skinned up, and left unattended without having an EMT examine him.  Plaintiff alleged that the next day he was examined by an EMT who sent him to the hospital to be examined by a doctor. Plaintiff alleged that an investigative services officer took photographs of his injuries.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P.  Supporting affidavits must set forth facts which would be admissible in evidence.  Opposing responses must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(c).

### B. Qualified Immunity

Defendants argued that they are entitled to qualified immunity because their conduct did not violate any of the plaintiff's clearly established constitutional or statutory rights of which a reasonable person would have known.

A state official sued in his individual capacity for damages may assert a qualified immunity defense.  *Procunier v. Navarette*,

434 U.S. 555, 561, 98 S.Ct. 855, 859 (1978).   This immunity is defeated if the official violated clearly established statutory or constitutional rights, of which a reasonable person would have known.   *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982).   In assessing the applicability of a qualified immunity defense, the court must first determine whether the plaintiff has asserted a violation of a clearly established right at all.   *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789 (1991). If the court determines that there was a violation of a right secured by the Constitution, then it must determine whether the defendant could have reasonably thought his actions were consistent with the rights he is alleged to have violated.   *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987).   The protections afforded by the qualified immunity defense turn on the "objective legal reasonableness" of the defendant's conduct examined by reference to clearly established law.   *Id*., at 639, 107 S.Ct. at 3038.   The court does not ascertain solely whether the law was settled at the time of the defendant's conduct, but rather, when measured by an objective standard, a reasonable officer would have known that his conduct was illegal.   Even if a defendant's conduct actually violates a plaintiff's constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively reasonable.   *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272 (5th Cir. 1992), *citing Pfannstiel v. City of Marion*, 918

F.2d 1178, 1183 (5th Cir. 1990); *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989); *Matherne v. Wilson*, 851 F.2d 752 (5th Cir. 1988).

## 1. Deliberate Indifference to Risk of Suicide

In his verified complaint, the plaintiff alleged that on June 12, 2010, Sgt. Laurent failed to protect him from harming himself after he told Sgt. Laurent he was suicidal and wanted to be placed on suicide watch. Specifically, the plaintiff alleged that on June 12, 2010, he told Sgt. Eby that he was suicidal and declared himself a mental health emergency. Plaintiff alleged that Sgt. Eby restrained him and then placed him in a shower cell until the shift changed. Plaintiff alleged that Sgt. Laurent removed him from the shower cell and placed him back in his cell and removed the restraints. Plaintiff alleged that he told Sgt. Laurent that he was having suicidal thoughts and asked why he was not placed in an appropriate cell. Plaintiff alleged that Sgt. Laurent told him that there was no other place to put him. Plaintiff alleged that he tried to hang himself and that Sgt. Laurent cut him down.

Sgt. Laurent offered a different version of the incident. According to Sgt. Laurent, on the day of the incident he began his shift at 5:30 p.m.[5] At shift change he was not informed that an inmate had declared himself a mental health emergency on the prior

---

[5] Record document number 33-3.

6

shift or that the plaintiff had been placed in the shower.[6]  While making rounds, Sgt. Laurent observed the plaintiff standing near the front of his cell but did not speak with him.[7]   At approximately 7:15 p.m., Sgt. Laurent observed the plaintiff standing at the front of his cell with one end of a sheet around his chin and the other end of the sheet tied to the top of the bars of his cell.[8]  Sgt. Laurent activated his beeper and then used a pair of paramedic shears to cut the sheet from the bars.[9]  Sgt. Laurent observed the plaintiff fall to the ground and his leg twitched.[10]  Medical personnel arrived to assist the plaintiff.[11]

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994).  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

inference.  *Id*.

There are material factual issues in dispute which render summary judgment on the plaintiff's deliberate indifference claim against Sgt. Laurent inappropriate.

First, neither party offered inmate location sheets, log book entries or other documentation which would establish (1) whether Sgt. Eby worked on the 5:30 a.m. to 5:30 p.m. shift, and (2) whether Sgt. Eby put the plaintiff in the shower cell after he purportedly declared himself a mental heath emergency prior to the 5:30 p.m. shift change on June 12, 2010.[12]  Presumably, if the plaintiff actually declared himself a mental health emergency on the prior shift, it would have been indicated on one or more documents.  Also, if he plaintiff had been placed in the shower cell during the prior shift and later returned to his cell by Sgt. Laurent, that too would have been indicated in prison records. There is no entry in the log book for the shift beginning at 5:30 p.m. on June 12, 2010, indicating that the plaintiff was moved prior to his suicide attempt at 7:15 p.m.[13]  The absence of a log book entry showing that the plaintiff had been placed in the shower

_____

[12] Defendants filed under seal copies of the log book entries and the Camp J Daily Post Roster for the 5:30 p.m. shift, record document numbers 24, pp. 19-20, and record document number 22-4, respectively, but did not submit copies of either for the earlier shift.

[13] Record document number 24, p. 19.  Defendants did not specifically rely on the content of the log entries in support of their motion for summary judgment.

cell before the shift change would support the conclusion that the plaintiff is not credible and his allegations are false.  But when ruling on a motion for summary judgment, the court cannot rely on assessments of the credibility of the witnesses.

Second, the defendants relied almost exclusively on a copy of the Camp J Unit Shower Roster dated June 12, 2010, in support of their motion.[14]  However, the Shower Roster is confusing.  According to the affidavit of Maj. Whitaker, when an inmate declares he is suicidal and is placed in a shower cell, an entry is made on the Shower Roster for the time the inmate is placed in the shower.[15] Record evidence showed that the plaintiff was assigned to Alligator (also referred to as "Gator") 3 Left, cell number 5.[16]  Although the defendants argued that the shower roster showed that the plaintiff refused a shower on the day of the incident, a review of the shower roster showed that the inmate assigned to cell number 6 refused a shower while the inmate assigned to cell number 5 was logged into the shower at 6:26 p.m. and was logged out at 6:39 p.m.[17] Plaintiff's name appears in the Notes section of the Shower Roster

---

[14]  Record document number 33-4.

[15]  Record document number 33-5.

[16]  Record document number 22-3, p. 6.

[17]  Record document number 33-4, p. 2.

for both cell number 5 and cell number 6.[18]  Defendants offered no
explanation for the plaintiff's name being entered in the Notes as
assigned to two cells.[19]  Viewing this evidence in the light most
favorable to the plaintiff, as the party opposing summary judgment,
this evidence contradicts Maj. Whitaker's statement in his
affidavit that the plaintiff was never placed in the shower cell on
June 12.

Third, documents filed in the record conflict as to the
location of the incident.  Some documents indicate that the
plaintiff attempted suicide in Alligator 3 Left cell 5,[20] while
other documents indicate the incident took place on Cuda 2 Right.[21]

For the foregoing reasons, summary judgment on the plaintiff's
deliberate indifference claim against Sgt. Laurent is
inappropriate.

## 2. Excessive Force During and After Cell Entry

In his verified complaint, the plaintiff alleged that Capt.
Cashio, Lt. Griffin, Capt. Barr, Capt. Conrad and Lt. Col. Foster

---

[18] *Id.*

[19] According to Maj. Whitaker, the inmate names are filled in
on the Shower Roster in advance and the shower times are logged as
they occur.  When there is a change in a cell assignment, the name
on the prepared Shower Roster is scratched out and the new inmate's
name is placed in the Notes section.  Record document number 33-5,
p. 1.

[20] Record document number 22-3, p. 2.

[21] Record document number 18-1, pp. 242-243.

subjected him to an excessive use of force.

Force is excessive and violative of the Eighth Amendment only if applied maliciously and sadistically for the very purpose of causing harm, rather than a good faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995 (1992); *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078 (1986). A necessary element of the excessive force claim is the proof of injury resulting from the use of force. *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926, 113 S.Ct. 1298 (1993).

### Capt. Cashio and Msgt. Griffin

Plaintiff alleged that Capt. Cashio and Lt. Griffin were summoned to provide him with medical treatment after his suicide attempt. Plaintiff alleged that Capt. Cashio and Lt. Griffin kicked water in his face, Lt. Griffin choked him, Capt. Cashio twisted the plaintiff's, and the skin on the plaintiff's chest was rubbed off when Capt Cashio screwed his fist into the plaintiff's chest, Capt. Cashio punched the plaintiff in the ear causing it to bleed, and Capt. Cashio beat the plaintiff's testicles with a shower slipper and hit him hard under his nose.

The summary judgment evidence showed that following the plaintiff's suicide attempt, Capt. Cashio, a paramedic, and Lt.

Griffin, an EMT, responded to the incident.[22]  When Capt. Cashio and
Lt. Griffin arrived, the plaintiff was lying on the floor,
unresponsive.[23]  Capt. Cashio first assessed the plaintiff's level
of consciousness by asking him questions.[24]  When the plaintiff
failed to respond, Capt. Cashio applied a sternum rub, a form of
physical stimuli,[25] and the plaintiff grimaced in response to the
physical stimuli but refused to respond to verbal stimuli.[26]
Defendants checked the plaintiff's neck for ligature marks and a
pulse.[27]  Plaintiff was removed from his cell and transported to the
Adult Treatment Unit ("ATU").[28]  To ensure that the plaintiff was
still responsive, Capt. Cashio administered a sternum rub a couple
more times during the plaintiff's transport to the ATU.[29]

   The summary judgment evidence showed that physical stimuli are
often painful and the techniques used can include twisting a nipple
or a sternal rub, in which the knuckles are rubbed vigorously on

---

[22] Record document numbers 33-7 and 33-8.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] Record document number 33-8.

[28] *Id.*

[29] Record document number 33-7.

the unresponsive person's sternum.[30]  The summary judgment evidence showed that the bruising in the center of the plaintiff's chest is consistent with a sternal rub.[31]

Plaintiff's medical records showed that when medical personnel arrived following the incident, the plaintiff was observed on the floor, unresponsive.[32]  A small puncture wound or a laceration to his left ear lobe with no active bleeding was observed.[33]

Plaintiff's mental health records showed that although the plaintiff was discovered with a sheet around his neck, he was not in a weight-baring condition when observed and medical examination revealed no related injuries.[34]

There is no evidence that either defendant Capt. Cashio or Lt. Griffin applied any force on the plaintiff maliciously and sadistically for the very purpose of causing him harm.  Defendants are entitled to summary judgment as a matter of law.

### Capt. Barr, Capt. Conrad and Lt.Col. Foster

Plaintiff alleged that after receiving medical treatment, Capt. Barr transported him to Camp J.  Plaintiff alleged that when he arrived, Capt. Conrad walked up to the transportation van and

---

[30] Record document number 33-9.

[31] *Id.*

[32] Record document number 18-1, p. 242-243.

[33] *Id.*

[34] Record document number 18-1, p. 233.

asked him what was wrong with him.  Plaintiff alleged that before
he could respond, Lt. Col. Foster said that there was nothing wrong
with him and told the officers to pull him out of the van.
Plaintiff alleged that Capt. Barr and Capt. Conrad dragged him out
of the van and along a concrete sidewalk for approximately 50 to 60
yards.  Plaintiff alleged that Lt. Col. Foster encouraged them to
use excessive force against him.  Plaintiff alleged that he was
skinned up as a result of being dragged to his cell.

The summary judgment evidence showed that on June 12, 2010, at
approximately 10:05 p.m., the plaintiff was transported from the
ATU to the Camp J sallyport by Capt. Derek Barr.[35]  Defendant Capt.
Joseph Barr, was not on duty on June 12, 2010, and was not involved
in the alleged incident.[36]  The summary judgment evidence showed
that Capt. Conrad arrived in the sallyport area to escort the
plaintiff to his cell.[37]  Plaintiff refused to comply with orders
to get out of the van,[38] and Capt. Derek Barr and Capt. Conrad each
took the plaintiff by the arm and removed him from the van.[39]  After
he was out of the van the plaintiff went limp and refused to walk

---

[35] Record document number 24, pp. 7-8.

[36] Record document number 33-6.

[37] *Id.*

[38] Record document number 33-10.

[39] *Id.*

or stand.[40]  Capt. Derek Barr and Capt. Conrad got on opposite sides of the plaintiff and carried him to his cell.[41]  An EMT arrived on the unit at 10:47 p.m. to examine the plaintiff.[42]

There is no evidence that the force used to remove the plaintiff from the transport van and return him to his cell was applied maliciously and sadistically for the very purpose of causing him harm.  Defendants are entitled to summary judgment as a matter of law on this claim.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the defendants' Motion for Summary Judgment be granted in part, dismissing the plaintiff's excessive use of force claims against Capt. Darren Cashio, Lt. Kevin Griffin, Capt. Joseph Barr, Capt. Juan Conrad, and Lt. Col. Warren Foster.  In all other respects the defendants' motion for summary judgment should be denied and this matter be referred back to the magistrate judge for further proceedings on the plaintiff's deliberate indifference claim against Sgt. Raymond Laurent.

Baton Rouge, Louisiana, January 25, 2013.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[40] *Id.*

[41] *Id.*

[42] Record document number 22-4, p. 4.